AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| United States of America<br>v.<br>CASEY CHARLES SPAIN<br><br>*Defendant(s)* | )<br>)  Case No. 3:17mj152<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 31, 2017__ in the county of __City of Richmond__ in the
__Eastern__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's Signature*
Heather J. Brown, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/31/2017

_____
/s/
Roderick C. Young
United States Magistrate Judge

City and state: Richmond, Virginia

Roderick C. Young, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Heather J. Brown, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant under Rules 3 and 4 of the Federal Rules of Criminal Procedure for CASEY CHARLES SPAIN, for the offense of felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since 2012. I am currently assigned to the Richmond Joint Terrorism Task Force, and have been since 2015. Much of my investigative experience revolves around extremist minded individuals that break the law in furtherance of their violent ideologies. I have participated in numerous investigations that have involved the use of a variety of law enforcement techniques, including the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, pen registers, telephone toll analysis, investigative interviews, the preparation and execution of search and arrest warrants, and reviews of taped conversations involving extremist minded individuals. During the course of my employment with the FBI, I have participated in state and federal arrests. From these arrests, I have had the opportunity to interview individuals involved in extremist motivated activity. In my investigative experience, I have learned of measures that extremist minded individuals use to avoid law enforcement surveillance and investigations, such as the development and use of aliases; the use of instant messaging, communication applications, text messaging, and prepaid cellular telephones to avoid

electronic surveillance; and the use of counter-surveillance driving techniques to avoid being followed by law enforcement. Similarly, when extremist minded individuals are being sensitive to law enforcement monitoring, they often times will conduct planning and organizing meetings in person, as well as through social media and communication applications to avoid law enforcement interception.

3. In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, and other items evidencing violations of state and federal laws, including various sections of Title 18, United States Code, Sections 922(g) and 2339.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant, and does not set forth all facts known to either me or other law enforcement agents about this matter.

## **RELEVANT STATUTORY PROVISIONS**

5. Title 18, United States Code, Section 922(g) provides in relevant part that it shall be unlawful for any person—

(1) [W]ho has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year…

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or

2

6. Title 18, United States Code, Section 921(a)(3) defines the term "firearm" to mean "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

## PROBABLE CAUSE

7. CASEY CHARLES SPAIN came to the attention of your affiant from information received from the Virginia Department of Corrections. SPAIN has a criminal record that includes a conviction in 2006 for malicious wounding, and a conviction in 2010 for abduction with intent to defile. For the latter offense, he served over seven years of active incarceration until his release on August 11, 2017, from the Virginia Department of Corrections, Greenville Correctional Center. While incarcerated, SPAIN became radicalized and adopted extremist Islamic views. He obtained a tattoo on his cheek that reads "Cop Killa," and a tattoo of the flag of the Islamic State of Iraq and al-Sham ("ISIS" – a designated Foreign Terrorist Organization) on his back. Two confidential sources of information who had contact with SPAIN while he was incarcerated separately reported that SPAIN swore a pledge of loyalty, commonly known as *bayat*, to Abu Bakr al-Baghdadi, the leader of ISIS. SPAIN also told both individuals that he wanted to travel overseas to engage in jihad on behalf of ISIS, and if upon his release he were not permitted to travel he would engage in jihad, to include acts of violence against targets in the United States.

8. Because of this information, investigators with the FBI have conducted intensive surveillance of SPAIN since his release from incarceration on August 11, 2017. This

3

surveillance has included making covert contact with SPAIN with FBI undercover employees ("UCE"s), as well as the use of a confidential human source ("CHS"), who was introduced to SPAIN on August 19, 2017.

9. Since that date, SPAIN has spoken on multiple occasions to the CHS about his strong desire to both travel overseas to engage in actions in support of ISIS, and to obtain a firearm, specifically a handgun. According to the CHS, SPAIN does not want to make friends, nor does he want to find a girlfriend, but rather talks almost exclusively about traveling overseas to join ISIS forces.

10. The CHS reports that, in multiple conversations, SPAIN provided several reasons for wanting to obtain a handgun. First, SPAIN reports feeling naked and vulnerable without one. Second, SPAIN stated that if "three or more" law enforcement officers came to his home then he "knew what time it was," or words to that effect, and that he would kill as many officers as he could rather than go back to prison. Third, and related to the second point, SPAIN stated that going back to prison was not part of his plan, which the CHS understood to mean would interfere with SPAIN's plan to engage in activities in support of ISIS. The CHS's information regarding SPAIN's plan is corroborated by several recorded conversations SPAIN has had with still-incarcerated prisoners since his release on August 11, 2017. Review of those recorded conversations reveal that SPAIN discussed with these prisoners his desire to travel overseas to engage in activities on behalf of ISIS. Additionally, SPAIN claimed in a recorded conversation to have had discussions with ISIS members currently overseas since his release.

11. On August 29, 2017, an FBI UCE ("UCE 1") discussed with SPAIN, via a cellular telephone messaging application, general plans for UCE 1 to sell a semiautomatic gun to

4

SPAIN. UCE 1 told SPAIN that he could obtain a firearm for him in several days' time.

12. On the following day, August 30, 2017, the CHS and a second FBI UCE ("UCE 2") met with SPAIN and learned that SPAIN had done his own online shopping on the website www.vaguntrader.com to obtain a weapon. SPAIN described to the CHS his intention to purchase a 9 mm semiautomatic handgun with a 50-round barrel canister and that he had made arrangements to buy the handgun from an individual online. SPAIN showed his smartphone to UCE 2 to share with UCE 2 parts of his conversation with the reported seller of another firearm, and showed a picture to UCE 2 of the gun SPAIN intended to purchase from the seller. UCE 2 described the firearm SPAIN showed him on his smartphone as a magazine fed handgun with multiple magazines.

13. Because of SPAIN's violent history, his stated intentions, and the impatience he exhibited with regard to obtaining a firearm, the FBI organized an undercover operation in which the CHS would make a controlled delivery of a handgun, which he told SPAIN was his own personal weapon. The weapon used in the undercover operation was a 9 mm Glock semi-automatic handgun, with a removed serial number plate. For safety reasons, FBI personnel made the handgun inert. This controlled delivery would occur under close supervision of special agents and task force officers with the FBI's Joint Terrorism Task Force with the intention of immediately arresting SPAIN when he took possession of the firearm.

14. In the early morning of August 31, 2017, investigators executed the undercover operation during which the CHS, who was accompanied by a third FBI UCE ("UCE 3"), met SPAIN outside of his (SPAIN's) residence located on Harvie Road in Richmond, Virginia. At that meeting, the CHS provided SPAIN the above-described firearm. At approximately 2:56

5

a.m., UCE 3 observed SPAIN take possession of the above firearm and provided a signal to the FBI Richmond SWAT team, who executed a probable cause arrest on SPAIN. Upon the initiation of the arrest operation, SPAIN attempted to flee law enforcement by running and jumping a nearby fence. FBI SWAT members pursued SPAIN on foot and quickly apprehended him. During the foot-chase, SPAIN attempted to dispose of a cellular telephone that he had in his possession by throwing it while running, and moments before he was apprehended he also threw down the firearm. Investigators immediately recovered and seized both of those items.

## CONCLUSION

15. I submit that this affidavit supports probable cause for a criminal complaint and arrest warrant for CASEY CHARLES SPAIN for the offense of felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1).

Respectfully submitted,

_____
Heather J. Brown
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
On this 31st day of August, 2017

/s/
_____
Roderick C. Young
United States Magistrate Judge